SHANNON, Judge.
The appellant-defendant has appealed from judgment and sentence entered against him for violation of the lottery laws of the State of Florida. The State has filed cross-assignment of error pointing to a certain instruction of the trial court.
The information upon which the defendant was tried was in three counts, the first of which charged that the defendant did unlawfully set up, promote or conduct a lottery for money, commonly known as “Bolita” or “Cuba”; the second count charged that he’ did unlawfully aid and assist in the setting, up; promoting or conducting of a lottery for money, commonly known as “Bolita” or “Cuba”; and the third count charged that he did unlawfully conspire, agree, combine and confederate to unlawfully conduct a lottery for money, said lottery being commonly known as “Bolita” or “Cuba”. Shortly after the information was filed, the county solicitor filed a bill of particulars, as requested by defendants. The information was against this defendant and six other codefendants. At the trial a motion for a directed verdict was denied'and the defendant here was convicted on counts one and two. A motion for new trial was denied, and he was sentenced on the first count. Sentence was withheld as to the second count, pending clarification of a case then on appeal. The jury was unable to reach a verdict as to the other six defendants, and a mistrial was declared.
This appeal is based on three points; namely, (1) whether the trial court committed error in denying defendant’s motion for directed verdict, (2) whether the trial court committed error in instructing the jury as to the law relative to “possession”, and (3) whether the trial court committed error in admitting certain testimony of one of the state’s witnesses. The state on cross-assignment challenges the correctness of the trial court’s instruction to the jury on the necessity of the state to prove that the lottery involved was a “live lottery.”
Prior to the information being filed, law enforcement officers had maintained surveillance of various of the defendants and places that they frequented. On March 22, 1958 they entered the home of the defendant, seized sundry items of lottery paraphernalia and arrested some of the defendants. At the time of the raid the appellant was not present, nor did the state prove that he ever handled any of the particular lottery paraphernalia which was seized. His conviction was on circumstantial evidence and no testimony was offered by the defendant. The question is whether or not the evidence submitted by the state was legally sufficient to support the charge,
*805 As was said in Victor v. State, 1939, 141 Fla. 508, 193 So. 762, 763:
“While it is true that most of the evidence adduced was circumstantial, this court has repeatedly held that when such evidence is of a conclusive nature and tendency, and is consistent with guilt and inconsistent with innocence, leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense charged, such evidence will sustain a conviction. [Citing cases] And a party moving for a directed verdict admits facts in evidence adduced and every conclusion favorable to his adversary fairly and reasonably inferable therefrom. [Citing cases].”
The defendant cites the case of Harrison v. State, Fla.App.1958, 104 So.2d 391, where a conviction on circumstantial evidence was reversed. However, the majority of that court explained its ruling by saying, at page 395:
“ * * * As was stated in Adams v. State [Fla.App., 102 So.2d 47], this court is fully cognizant of the rule that conviction may be had upon circumstantial evidence alone, and although the State’s burden does not extend to an absolute metaphysical and demonstrative certainty in proving a crime by circumstantial evidence, it must be sufficient as to every essential element of the crime charged to meet the requirement of the rule as set forth above. When measured in a light most favorable to the State, the evidence adduced in this case is not sufficient to close the gap to the reasonable hypotheses of innocence; and is therefore insufficient to sustain conviction.”
The rule is quite plain as to when a verdict should be directed, but it is in applying the rule to a given set of facts that difficulty is encountered. The trial of this case lasted several days, ■ and though the defendant was not present at his house when the raid was made, there is circumstantial evidence from which the jury could have concluded, as it did in the verdict, that the defendant was implicated. Further, the state may be aided by a presumption in meeting its burden of proof, as pointed out in 54 C.J.S. Lotteries § 26, p. 872:
“Evidence that a lottery was being operated in the home and on the premises of accused raises a presumption that he was aiding and abetting in the operation of the lottery. The finding of lottery paraphernalia in the home of accused creates a presumption that he was the owner and possessor thereof, and that he was maintaining a lottery; but such presumption is a rebut-table one. * *
After studying the transcript of the testimony, we will have to hold that the trial court did not err in denying the motion for directed verdict. The case was correctly submitted to the jury.
In his second point the defendant complains of the. court’s instruction on “possession”. The jury had the case for some time when it returned into open court and requested that the court repeat the instruction on possession. The court did so, saying:
“Possession is usually defined as having personal charge of or exercising right of ownership, management or control of the thing said to have been possessed. To constitute possession, there need not necessarily be an actual manucaption of the things possessed; that is, it does not have to be held in the hand, nor is it necessary that it be otherwise actually upon the person of the possessor. There must, however, be a conscious and substantial possession by the accused as distinguished from a mere involuntary or superficial possession. Whether or not the accused, or any of them, were in conscious and substantial possession of the things *806 alleged to have been found in the premises said to have been owned by the defendants Diecidue, may be lawfully inferred by the swroimding circumstances, especially in the absence of contrary or exculpatory evidence.” (Emphasis supplied.)
This instruction was given to the jury in the original charges without objection by this appellant. At the second reading, however, the appellant objected to the italicized portion, saying that, by so instructing, the trial court improperly established the material fact of possession and improperly called the jury’s attention to the fact that the appellant had not testified in his own behalf.
Viewing an instruction in isolation is a far different matter than viewing it in context with all other instructions, as the jury does. The test is whether the law is fairly presented to the jury, and it is well established that a challenged instruction must be considered in connection with all other instructions bearing on the same subject. Driver v. State, Fla.1950, 46 So.2d 718; Higginbotham v. State, 1944, 155 Fla. 274, 19 So.2d 829; Barkley v. State, 1942, 152 Fla. 147, 10 So.2d 922; Smith v. State, 1942, 149 Fla. 511, 6 So.2d 383.
 When considered with the other instructions, we cannot hold this instruction error. The jury was properly informed that they could take into consideration all the surrounding circumstances in determining whether or not the accused was in conscious and substantial possession of t-he lottery paraphernalia. Also, when read in context, we cannot see that this instruction violated appellant’s rights by calling attention to the fact that he did not testify.
The third point which the defendant makes concerns a question asked and answer given by an expert witness put on the stand by the state. He was asked the following question:
“Q. Mr. Anderson, based upon your vast experience in connection with law enforcement and in connection with the illegal lottery known as Cuba, based upon your personal observations of the scene as it existed at the raid of the Diecidue home at 4501 10th Avenue, Tampa, Florida, and based upon your personal analysis and examination of all of the evidence seized and admitted in evidence in this cause today, what in your opinion was going on at the Diecidue house at the time of the raid on March 22, 1958?”
And the answer given by the witness:
“In my opinion, sir, a lottery checkup for a lottery, a large lottery operation of a multi-county nature, was going on at that house.”
The defendant’s objection to the question and answer is two-pronged: (1) that the witness Anderson had never testified as to what he personally observed at the scene of the raid, and (2) that the portion of the question calling for the witness’ opinion as to what was going on at the appellant’s home at the time of the raid called for an opinion on a rtíatter not a proper subject for expert testimony. However, the record clearly demonstrates that the witness was an expert in lottery organizations and work, that he had examined all of the state’s exhibits, and that he was present at the raid and saw and knew what transpired.
The defendant’s position is that the answer to the question invades the province of the jury because the answer was one which the jury was fully capable of drawing from the circumstances of the case without the aid of any expert opinion. It is true that his answer contains an inference, or possibly an ultimate fact which the jury had before it, but on the other hand such testimony is admissible if it has to do with matters and things which are not those of common knowledge and would be of aid to the jury and the court. This *807 rule is recognized and applied in Florida in the case of Tongay v. State, Fla.1955, 79 So.2d 673. The portion of that case with which we are concerned states at page 676:
“The rule is well settled that expert witnesses may be permitted to testify to facts known to them account of their expert knowledge. This is true even though the testimony may point to an inference or the ultimate fact to be determined. Admission vel non of expert evidence depends on whether or not such evidence has to do with matters which are not those of common knowledge and will be of aid to the jury or the court. If either is true, it should be admitted even though it involved ultimate facts to be decided by the jury. * *
The nature of the lottery check-up house is not known to the average juror. As an expert it comes well within the qualifications of this witness to state, from his personal observation and from the testimony adduced, that the house was used as a lottery check-up point. We find no error in such testimony.
On the cross-appeal, taken under section 924.07(4), Florida Statutes, F.S.A., the state has attacked an instruction given by the trial court. The court charged the jury that:
“ * * * [T]he evidence must establish beyond a reasonable doubt that on February 1, 1958 or February 8, 1958 or February 15, 1958 or March 1, 1958 or March 15, 1958 or March 22, 1958; that is to say, on any one or more of those days, the lottery in question was a live lottery yet to be held. * * * ”
The state contends that this instruction casts an unauthorized burden of proof upon it in not only requiring the state to prove the lottery, but also requiring proof that the lottery was “live” — or in other words, that it was yet to be held on one of the dates specified. There is no question that the state was bound to the dates mentioned, as they had been set forth by bill of particulars. The problem concerns whether or not the state had to prove the lotteries were “live”.
There is no explicit demand for such proof in the statutes upon which the information rests, Fla.Stat. § 849.09(1) (a) and § 849.09(1) (d), F.S.A. The reasoning in the case of Holliday v. State, Fla.App. 1958, 104 So.2d 137, cited by both counsel, would also seem to negate such a demand. In that case the First District Court of Appeal reversed a lottery conviction under Fla.Stat. § 849.09(1) (d), F.S.A. The state moved for a rehearing on the grounds that the opinion unduly broadened existing law. The rehearing was denied, but the court took occasion to clarify its previous opinion, and Judge Carroll discussed this particular point in his concurring opinion, at page 143, saying:
“ * * * I feel that it should be made crystal clear on this rehearing that this court does not hold that an essential element of the offense of being ‘interested in or connected * * * with’ a lottery under Sec. 849.09, Florida Statutes, is that the lottery irt question be a ‘live lottery’, that is, a lottery yet to be played as of the time of the defendant’s arrest or the time of the filing of the information against him.
“ * * * [T]he evidence must establish that, as of the date of the filing of the information against the defendant, or the return of the indictment, as the case may be, the lottery in question was either one yet to be held or that the acts constituting the violation of the statute occurred within the period prescribed by the applicable statute of limitations.”
The same words are applicable to this case. The state has the alternative of proving, on one or more of the dates specified, either a completed lottery, or a “live” lottery. The bill of particulars here is important in limiting the state to the dates therein set forth — but no more.
*808 As a result’ we find the position set forth by the state in their brief to be well taken. If the state were required to prove that lotteries, such as we have here, were “live”, there could never be a felony conviction of a defendant caught with damaging evidence of a completed offense, and this would greatly limit the felony provisions of Fla.Stat. § 849.09, F.S.A. Therefore we must rule for the state on the cross-appeal, and we find the trial court erred in giving this particular instruction.
In so ruling, however, we do not alter the validity of appellant’s conviction. The jury found the appellant guilty, as noted above, in spite of the instruction which was unnecessarily burdensome to the state. Our discussion of the cross-appeal is authorized by section 924.37(2), Florida Statutes, F.S. A., and it is strictly limited in effect to the point of law concerning the instruction in question. On the conviction itself, the trial court is affirmed.
Affirmed.
ALLEN, C. J., and MORROW, RUSSELL O., Associate Judge, concur.